CARRIE LUDWIGSEN AND OTHERS, CLAIMANTS-APPEL-
LANTS, v. NEW JERSEY DEPARTMENT OF LABOR
AND INDUSTRY, DIVISION OF EMPLOYMENT SECUR-
ITY, BOARD OF REVIEW; WRIGHT AERONAUTICAL
CORPORATION (CURTISS-WRIGHT CORPORATION),
SLATER COMPANY, RESPONDENTS-RESPONDENTS.

Argued March 2, 1953—Decided March 30, 1953.

Mr. *Samuel L. Rothbard* argued the cause for appellants (*Messrs. Rothbard, Harris & Oxfeld*, attorneys; Mr. *Howard A. Goldberger* on the brief).

Mr. *Clarence F. McGovern* argued the cause for respondent Board of Review.

Mr. *Robert P. Knapp, Jr.*, of the New York Bar, argued the cause for respondent Curtiss-Wright Corporation (*Mr. Thornton C. Land*, attorney; Mr. *Daniel F. O'Connell*, of the New York Bar, and *Mr. Knapp* on the brief).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. This appeal to the Appellate Division, here on certification of our own motion, brings up the decision of the Board of Review, Division of Employment Security, that the appellant claimants were ineligible for benefits during the period of their unemployment from

September 15 to December 3, 1951. The decision, applicable to all claimants, was made on the claim of Mary E. Haberli and rests on a finding that she "could have had suitable work all the time that she was unemployed. She did not have good cause for refusing it."

The claimants were employed in the plant cafeteria maintained by the then-named Wright Aeronautical Corporation (now Curtiss-Wright Corporation) for the convenience of the approximately 15,000 employees at its Wood-Ridge plant. Claimants were covered by a collective bargaining agreement between Wright and Local 669, UAW-CIO, which agreement also covered some 10,000 production workers at the plant.

On September 15, 1951 Wright discontinued self-operation of the cafeteria and turned over the operation to respondent Slater System, Inc., specialists in the management of industrial food facilities. Slater agreed with Wright to continue the claimants in its employ. The claimants, however, did not take employment with Slater but, upon receipt from Wright of notices of termination of employment with Wright effective September 15, filed claims for unemployment benefits.

█ R. S. 43:21–4, as amended by L. 1948, c. 110, p. 598 (amendments made by L. 1952, c. 187, p. 616, are not pertinent), provided that "An individual, totally or partially unemployed, shall be eligible to receive benefits * * * only if it appears that: * * * (c) He is able to work, is available for work, and has demonstrated that he is actively seeking work, * * *." The substantial question is whether the claimants were "available for work" in light of their failure to accept employment with Slater. "The availability requirement is satisfied only when the workman is able, willing and ready to accept 'suitable work which he does not have good cause to refuse.'" *Valenti v. Board of Review, etc.,* 4 *N. J.* 287, 290 (1950); *Muraski v. Board of Review, etc.,* 136 *N. J. L.* 472 (*Sup. Ct.* 1948).

█ The Board of Review's findings from the evidence may be summarized as determining that Slater offered to continue the claimants in its employ at the same wages and

under the same working conditions; that the claimants, however, preferred Wright as an employer and, with the active help, if not, indeed, at the instigation of their union, agreed among themselves not to accept employment with Slater; that by that and other measures, including, after Slater commenced operations, the encouragement by their union of a plant-wide boycott of the cafeteria participated in by all workers except executive and supervisory personnel, the claimants and their union endeavored to bring pressure upon Wright to retain the claimants in its employ; and that success attended this design when, on or about October 22, Wright made an agreement with the union affording the claimants opportunities for employment in production jobs in the plant. We think that the findings are fully substantiated in the evidence and establish that the claimants' unemployment was not involuntary in the sense contemplated by the act, but was voluntary in the sense that rendered them ineligible under section 4(c) to receive unemployment benefits.

█ The stated policy of the Unemployment Compensation Law is to protect workers against the dire and distressing consequences of "involuntary unemployment" which "falls with crushing force upon the unemployed worker and his family," *R. S.* 43:21–2. While the act is liberally construed to further its remedial and beneficent purposes, *Bergen Point Iron Works v. Board of Review, etc.*, 137 *N. J. L.* 685 (*E. & A.* 1948), the fund created to pay benefits thereunder is not to be used to finance employees who, merely because they prefer the former employer, deliberately and intentionally refuse to continue employment with the new operator of the business although no change in wage or working conditions is involved. *Cf. W. T. Grant Co. v. Board of Review, etc.*, 129 *N. J. L.* 402 (*Sup. Ct.* 1943); *Muncie Foundry Division of Borg-Warner Corp. v. Review Board of Employment Security Division*, 114 *Ind. App.* 475, 51 *N. E. 2d* 891 (*App. Ct.* 1943).

█ Though Slater did offer suitable work, the claimants were, of course, entirely free to refuse to work for Slater and

to attempt with the aid of their union by lawful means to prevail upon Wright to retain them in its employ. But their unemployment in furtherance of their aim was then by choice and their refusal to work for Slater disentitled them to unemployment benefits. Essentially, they and their union were hostile to employment with Slater because Slater was thought to hold an unsympathetic view toward unionization and because the claimants valued and did not wish to lose various benefits under the collective bargaining agreement with Wright, including claimed rights by reason of seniority to transfer to production jobs in the Wright plant. These reasons, while understandable, cannot be considered in light of the statutory policy to conserve the fund to protect workers from the hazards of "involuntary unemployment" in a determination of the suitability of the work available with Slater, nor do they constitute good cause for a refusal to accept such work. See *W. T. Grant Co. v. Board of Review, etc., supra;* R. S. 43:21–5(*c*) (1).

Originally the transfer of operation of the cafeteria was planned for the spring of 1951. That plan was suspended because of union opposition, but on September 6 notices were posted throughout the plant that the transfer would become effective on September 16. Also on September 6 Wright and Slater scheduled a meeting of the cafeteria workers to assure them that their employment would not be affected by the transfer. A union representative appeared at the meeting and, while the testimony as to what occurred is conflicting, there is evidence reasonably supporting the Board's finding that he prevented Slater from making or explaining the offer to the claimants. Thereupon, on September 7, Slater sent a letter to each employee inviting her to be interviewed by Slater representatives at a Paterson hotel on September 11 or 12 and enclosed an application form. None of the claimants appeared for an interview or filed an application. On September 13 Slater and union representatives met to discuss the problem. No agreement could be reached, and thereupon Slater abandoned its plan to continue claimants in its employ and made arrangements

to recruit other workers. Immediately after this meeting the union distributed circulars in the plant apprising the workers generally of the dispute. As mentioned, when, a day or two later, the cafeteria opened for business under Slater management, all Wright employees except executive and supervisory employees refused to patronize it.

Despite this abundant evidence that claimants' unemployment was entirely voluntary and that, so far as their actions bear upon their eligibility for benefits, they had no good cause to question the suitability of or to refuse the employment with Slater, they urge several arguments why they should, nevertheless, be considered eligible for benefits.

It is first contended that the Slater letters were not actual offers of employment but merely invitations to the claimants to apply for employment. We are satisfied that the letters, taken with the other proofs, fully support the findings of the Board of Review that the claimants and their union knew that their acquiescence was all that was necessary to have them continue their employment without change except as to their employer.

It is next urged that the claimants could ignore the letters because they were still Wright employees when the letters were received and had reason honestly to believe that Wright would not go through with the transfer to Slater. On the contrary, the evidence shows that the claimants and their union were fully aware as early as September 6 of Wright's determination to complete the plan, a fact confirmed by a notice of termination mailed by Wright to each claimant under date of September 11th.

The next argument is that the claimants could refuse employment with Slater and not be ineligible for benefits because they were entitled to a reasonable time within which to find work with another employer. They invoke by analogy an administrative determination of the Board of Review holding that a claimant who does not seek other work is not ineligible for benefits during the period of a lay-off made under circumstances which involve a reasonable expectation of early recall. But in addition to the fact that the claimants'

unemployment was not involuntary at any time, the Board of Review found on adequate evidence that they were not interested in nor did they make any real effort to find employment elsewhere, but devoted their effort to securing an agreement from Wright.

It is next argued that there was in any event no employment available in the cafeteria after September 17. This is questionable, but if work was curtailed, it was only because the claimants'. union brought about the boycott of the cafeteria by the other workers, a condition which their union could have corrected at any time.

The last point is that the Board of Review was without jurisdiction to consider and act upon testimony of events following the offer by Wright to employ claimants in production jobs pursuant to the agreement reached with the union about October 22. The evidence shows that the claimants refrained by common consent from accepting the Wright offer because of some dissatisfaction with the conditions attached. The argument is that the Board could determine the issue of eligibility solely on the basis of the claimants' failure to accept employment with Slater, the only ground for ineligibility mentioned by Wright when it originally protested the payment of benefits by a letter dated October 12. The point is without merit. The Board of Review has the power to, and in the interest of administrative efficiency ordinarily should, consider and determine each claim in all its aspects existing at the time of the hearing. *R. S.* 43:21–6(*e*) and (*f*); and see *Charles Headwear, Inc., v. Board of Review*, 11 *N. J. Super.* 321 (*App. Div.* 1951).

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.